CENTRAL TRUST CO. OF NEW YORK v. EAST TENNESSEE LAND CO.

(Circuit Court, E. D. Tennessee, S. D. December 20, 1895.)

FRAUDULENT CONVEYANCE—EVIDENCE.

A mortgage of its assets, real and personal, made by a land company to secure bonds provided that until default the company should retain the mortgaged property and the income therefrom, and have the same power to control and sell the same as if the mortgage had not been made, and that upon the sale of any part thereof a release for such part should be given by the trustee in the mortgage. It appeared that the mortgage covered all such solid assets as would furnish grounds of confidence to creditors. *Held,* that the mortgage was void as against existing creditors, but not as against subsequent creditors.

This was a bill in equity by the Central Trust Company of New York against the East Tennessee Land Company to foreclose a mortgage made by the East Tennessee Land Company, August 28, 1891, to secure $1,000,000 of bonds, dated and issued October 1, 1890, part of which had been sold and negotiated prior to the execution of the mortgage. The form of the bonds was incorporated and made part of the mortgage. They were payable 20 years after date, with interest payable semiannually; and each bond showed that it was one of the million issue, and contained the following provisions:

"For the payment of said bonds, and each and every of them, said company pledges its corporate faith, and hereby creates a charge and lien upon all the real property which it now owns or may hereafter acquire" in certain counties named. "The charges and lien hereby created on said land shall entitle the holders of said bonds to priority of satisfaction out of the same over all debts which may hereafter be created by the company: provided, that the charge and lien thus created in favor of the holders of said bonds shall be equal among all the holders; * * * provided, further, that nothing herein contained shall be so construed as to prevent the company, at all times prior to default herein, from taking and keeping possession of said lands, and using the same in the usual and ordinary course of business, and receiving and using the rents, issues, and profits arising therefrom, or from selling, conveying, leasing, or otherwise disposing of said lands, or any of them, to bona fide purchasers; and the sale of the land by the company in the ordinary course of its business shall not be construed to be pro-

hibited or prevented, and all lands so sold by it in good faith shall be relieved and discharged from the lien of said bonds; it being the purpose of this clause to permit the free and usual conduct by said company of its business of buying and selling lands unrestricted by the terms of this bond."

Then follow the conveying clauses of the mortgage, and the description of the property, consisting of all freehold and chattel interests in land, and all interests which the company has in "contracts, options, and agreements," and all after-acquired lands or interests in lands. It then provides as follows:

"Until default shall be made in the payment of principal or interest of said bonds, or some or any of them, or in some other covenant or agreement herein made, to be kept and performed by said party of the first part, the said party of the first part shall be permitted to possess, use, keep, and enjoy said lands, and every part thereof, with their appurtenances, and to take mineral, timber, stone, and other substances therefrom, and to take and use the rents, incomes, issues, and profits of every part thereof, in the same manner, and with the same effect, as though this mortgage deed of trust had not been executed."

The trustee covenants for itself, its successors and assigns, that:

"It will at all times, when the party of the first part is not in default in any of the covenants and agreements in this mortgage made and provided, release, on the request of the president and secretary of the first party, from the lien of this mortgage, all such lots, parcels, or tracts of land herein conveyed as shall from time to time be sold by the party of the first part in the usual course of its business as a land company, upon the following express terms and conditions, however: (1) That no property subject to the lien of this mortgage shall be released unless the same shall be bona fide sold at such price as shall, from time to time, be fixed and determined by the executive committee of the party of the first part, which said price so fixed shall at all times be open to the inspection of the trustee herein named, or any agent or attorney designated in writing by such trustee; and, in the event the said trustee shall be of the opinion that any lot or parcel of land is priced too low by the said executive committee, the schedule or sale price list of said lot or parcel of land shall at once be advanced to such price or sum, not above the real market value, as such trustee shall fix, and such lot or parcel of land shall not thereafter be sold at a less price than so fixed. (2) That no property subject to the lien of this mortgage shall be released unless the same is sold bona fide to an actual purchaser; and the purchaser shall, in case of town lots, have a down payment of at least one-third of the purchase price, and, in case of other lands, a down payment of at least one-fifth of the purchase price; the deferred payments to be evidenced by the notes of the purchaser, bearing interest at the rate of six per cent. per annum, payable annually, and secured by a vendor's lien on the property sold, expressly reserved in the deed conveying the same; provided, that such down or deferred payments may be made in the stock of the company, as now provided by its by-laws, or in any of the securities of the company which, by the terms thereof, are now receivable in payment of such down or deferred payments; and provided, further, that the trustee shall release such lots and parcels of land from the lien of this mortgage as said first party has heretofore or may hereafter give or donate to any religious or charitable purpose or use, or to any municipality for municipal or school purposes, or to any manufacturing or industrial company for a manufacturing site in or near the city of Harriman, Tennessee, or to any railroad company for a right of way through any of the lands hereby conveyed; it being expressly understood that the affidavit of the president or any vice president of the party of the first part, setting forth the existence of the facts requiring the release of any lots, tracts, or parcels of land under this clause of this deed, shall be sufficient evidence to authorize the trustee to execute the release required herein."

For the purpose of creating a sinking fund, the mortgagor then agrees that on or before the 10th of January and July of every year it will pay or cause to be paid to the trustee 20 per cent. of the proceeds of all sales of lots and tracts of land made by it during the preceding six months. It is provided that this 20 per cent. may be paid in money or notes given for land; or the corporation may, at its election, pay in 40 per cent. of the amount of sales in bonds. But it is expressly understood and agreed that when the purchaser of lands has paid for the same in "profit-sharing certificates," or coupons of such certificates, theretofore issued by the company, or in the stock of the company, no percentage of such payments are to be made to the sinking fund. The mortgage then provides for investing the sinking fund in the bonds secured by the mortgage.

Previous to the filing of the foreclosure bill by the Central Trust Company an insolvent bill had been filed in the same court by Ferdinand Schumacher and others; the insolvency of the East Tennessee Land Company had been adjudged, and receivers appointed; and upon the filing of the foreclosure bill the receivership was extended to this case. By leave of court the receivers answered, resisting the validity of the mortgage sought to be foreclosed, and insisting that it was void in law, because it provided that the mortgagor should retain possession and full power of disposition of the mortgaged property, and created a trust and reserved benefits in favor of the mortgagor.

Butler, Stillman & Hubbard and Wheeler & McDermott, for Central Trust Co.

Russell, Robinson & Winslow, for bondholders.

Robert Pritchard and Jerome Templeton, for receivers of the East Tennessee Land Co.

C. E. Lucky, for unsecured creditors.

SEVERENS, District Judge, sitting by designation because of the disability of CLARK, District Judge (after stating the facts). The mortgage and lien attempted to be executed and created by the East Tennessee Land Company were, in my opinion, fraudulent and void in law as to then existing creditors. The facts show, in substance, that the company, having gone on and created debts until it was necessary to raise further means for continuing its business, resorted to the scheme of issuing its bonds for $1,000,000, and securing them by a mortgage of all its solid assets, such as would furnish grounds of confidence to creditors. It is true, there were other assets, but they were largely speculative and uncertain in their character, and not to be relied upon by creditors for their debts. They might be something or nothing, as the boom upon which the corporation was moving should prosper or fail. Here it failed, as is the common issue. The mortgage or trust deed was so drawn as to close the gates against access by the creditors to the valuable assets of the company, and to leave them to the manipulation and use of the debtor, and sale by it for its own benefit, and assured to the debtor the privilege of conversion to its own use and

its own expenditures the property which would be useful for such purposes, without let or hindrance from creditors, who were thus compelled to stand in wait, and be satisfied at the pleasure of the debtor. If this is not a hindrance to creditors, it would seem difficult to contrive one. The answer offered is that the remedy still remained to the creditor to pursue the assets by a bill in equity. This is inadequate. That has always been the right of a creditor, and it would be novel to hold that that relieved the hindering contrivance of illegality. The English statutes against fraudulent conveyances are the foundation of the statutes on this subject in nearly all (perhaps all) of the states. Their construction and effect in each state are what the local decisions in such state attribute to them. Those statutes in Tennessee, as construed and applied by the supreme court, in my opinion, forbid such conveyance as this. The present case is a very fit one for the application of the doctrines held in Tennessee upon this subject, and the public policy of the state in the protection of its citizens would doubtless be advanced by a rigorous adherence to these doctrines in such cases. In the case of subsequent creditors, the situation is different. In the case of a concealed fraud, one subsequently becoming a creditor might be exposed to the like injury; but where that of which he might otherwise complain is open, and before his face, he accepts the situation, and should abide the consequences. He has nothing to complain of. The result, with reference to that branch of the controversy, without going at large into it, is that, in my opinion, as to the then existing creditors, these mortgage liens are void, but that they are not void as to creditors who became such subsequently. The result will be that the mortgage must be to that extent (that is, to the extent necessary to protect pre-existing creditors) held invalid, but as against others it will be held valid.